# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,        )
)
)
v.           )
)
KWESI HUDSON,        )     ID NO. 1809009750
)
Defendant.     )
)
)
)
)
)

Date Submitted: November 19, 2021
Date Decided: November 23, 2021

*Upon Defendant's Motion for an Evidentiary Hearing.* **DENIED**.
*Upon Defendant's Motion to Suppress.* **DENIED**.

## OPINION

William H. Leonard, Esquire, and Jenna Milecki, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorneys for the State of Delaware.

Raymond Armstrong, Esquire, Wilmington, Delaware, Attorney for Defendant.

**SCOTT, J.**

## INTRODUCTION

Before the Court is Defendant Kwasi Hudson's ("Mr. Hudson") Motion for Evidentiary Hearing and Motion to Suppress. Therein Mr. Hudson's Motion to Suppress, the first motion made before this Court, he challenges search warrants authorizing the search of cell tower records, his cell phone, and related data. He also argues unlawful search warrants led to numerous other warrants, which must now be suppressed. Upon a hearing Mr. Hudson requested, he, now, seeks an evidentiary hearing to introduce testimony from police officers to prove statements within the probable cause affidavit were false and intentionally made or made with reckless disregard to the statement's falsity. The Court has reviewed and considered the parties' written submissions and supplemental submissions, as well as evidence provided, and arguments made by the parties at the suppression hearing. For the following reasons, Mr. Hudson's Motion for an Evidentiary Hearing and Motion to Suppress are **DENIED.**

## FACTUAL BACKGROUND

*Delaware Abduction Incidents*

On February 13, 2017, New Castle County Police Officers responded to a call concerning a woman who was abducted from outside her apartment, Top of the Hill Apartment Complex. The victim reported a man approached her and forced her into her car by pointing a black handgun at her stomach. She described the suspect as wearing all black clothing with black gloves and mask. Once the suspect forced the

2

victim into the car, he physically and sexually assaulted her then drove her to three banks to withdraw cash from the ATMs at different locations. The victim reported the suspect ordered her to remove her pants and face the back of the car while straddling the center console. When the suspect drove to the banks, he repeatedly touched the victim's buttocks and made references to sexually assaulting her anally. When the suspect returned to Top of the Hill Apartment Complex, he instructed the victim to keep her head down while he left the complex, making a getaway.

On February 19, 2017, New Castle County Police Officers responded to a call at the Pour House Bar for another similar abduction at a different apartment complex, the Arundel Apartments. This victim reported to also be approached by a suspect who held a gun to her back and then forced her into her building and apartment. The victim reported once inside the apartment, the suspect ripped off her pants and underwear and proceeded to use the firearm he carried to sexually assault the victim anally. Then, the victim was forced into her car and sat in the passenger's seat facing the back of the car, while the suspect drove her to four banks to withdraw cash from the ATMs. The victim escaped at the fourth bank by sliding out of the passenger's side window. The victim described the suspect as wearing a black hoodie with the hood up over his head, black gloves, and a mask that covered his face up to his eyes.

3

Following the two abductions, the New Castle County Police authored search warrants which were signed by this Court on February 20, 2017[1].  The warrants allowed the search of towers of the five primary cellular wireless carriers from the location of one victim's address between 7:30 P.M. and 9:30 P.M., as well as PNC Bank on Marsh Road from 8:30 P.M. and 9:30 P.M.  The warrants also allowed for the search of towers of various cellular wireless carriers from the location of the other victim's address from 7:30 P.M. to 9:30 P.M., as well as Artisan Bank on New Linden Road from 8:00 P.M. to 9:00 P.M. on February 19, 2017.  The police chose the times based upon the time of the abduction and chose the two bank locations based on surveillance from the ATMs which depicted the victims with the suspect. Additionally, for all locations within the warrants, coordinates were used to correctly identify the precise location to be searched.

On March 6, 2017, New Castle County Police Officers responded to a call to Bluffs Apartment Complex regarding an attempted kidnapping.  This victim reported as she walked into her building to get to her apartment, a man wearing all black with the hood up, a black ski mask, and gloves, pointed a handgun at her head and demanded money.  The suspect tried to follow the victim into her apartment. The victim's boyfriend came to the door and the suspect fled the scene.

---

[1] Together with the cell tower warrants from March 7, 2017, are referred to as "Cell Tower Warrants"

On March 7, 2017, the New Castle County Police presented five additional search warrants to search the cell phone towers records of multiple service providers in the area of the Bluffs Apartment Complex victim's address from 5:30 P.M. to 7:00 P.M. on the date the attempted kidnapping occurred. The search warrants were signed by this Court.

***Armed Robbery at Delaware 7-Eleven and Walgreens***

Due to the similarities in the three incidents recounted above, New Castle County Police followed numerous leads and used investigative strategies which included reaching out to other jurisdictions and utilizing the National Database to attempt to identify similar incidents. While investigating, Detectives from the New Castle County Police Department became aware of an armed robbery at the 7-Eleven on Christiana Road in New Castle, Delaware, from May 15, 2017. Information of the 7-Eleven robbery was posted by the Delaware State Police in a police force sharing network. The suspect wore all black, including a black ski mask and gloves, and physically and sexually assaulted the female employee by anal penetration.

While investigating the 7-Eleven robbery, the Delaware Police identified a possibly related robbery at a Walgreens on Philadelphia Pike on January 17, 2017. In the Walgreens robbery, the suspect wore all black, including a black hoodie, and confronted an employee with a black handgun. In investigating the Walgreens

robbery, the Delaware State Police spoke with Pennsylvania police to determine whether the Walgreens robbery and subsequent robberies under similar circumstances occurred during the same time in Pennsylvania.

*Related Pennsylvania Robberies*

Upon eliciting the help of the Pennsylvania police, Delaware police learned: On May 9, 2018, a robbery occurred at a Walgreens Pharmacy in Upper Chichester, Pennsylvania. The suspect was described as a black male in a black ski mask carrying a black firearm. The suspect assaulted a female employee during the robbery. Pennsylvania police found a black ski mask and a pellet gun discarded near the scene and the DNA on the ski mask turned a match to Mr. Hudson's known DNA sample. On May 24, 2017, at a CVS in Media, Pennsylvania, another robbery was reported. The Pennsylvania police got the scene before the suspect could flee and took Mr. Hudson into custody. In the CVS Media robbery, Mr. Hudson wore all black, a black mask, black gloves, and was armed with a black firearm. He held the black firearm to the female clerk's head.

Following his arrest, on May 25, 2017, a search warrant was authored and approved to search a 2000 Gold Toyota Solara. The car was found close in proximity to the CVS where he was apprehended. Within the car, police found a black glove

6

matching the ones seen in the ATM surveillance footage from the Delaware abductions.

Pennsylvania police also located an Android ZTE Cellular Phone ("Android") with the International Mobile Equipment Identity ("IMEI") number 86341032809147 under the rear passenger side floor mat. Police identified a phone number of 302-XXX-8870 as belonging to Mr. Hudson and called the number while they had the Android in their possession. The police confirmed the phone number was the one belonging to the Android as the phone rang and displayed the police department number appeared on the display. Additionally, this confirmation of phone number was performed before any manipulation of the Android occurred.

On September 26, 2017, Upper Chichester Police Department authored a search warrant to download the contents of the Android. Because the phone was locked, the Upper Chichester Police contacted the Delaware State Police for assistance in execution of the warrant on February 13, 2018. On March 23, 2018, Delaware State Police contacted the Chief Investigating Officer at the New Castle County Police Department to inform him Mr. Hudson was a suspect in the 7-Eleven robbery they previously discussed and a viable suspect in the New Castle County abduction incidents.

### Mr. Hudson as Suspect in Delaware Abduction Incidents

Based on the tip from Delaware State Police, the Chief Investigating Offer began to look into Mr. Hudson as a possible suspect in the abduction investigations. New Castle County police were provided with Mr. Hudson's confirmed phone number from the Delaware State Police. The number was also independently confirmed this phone number because the number was associated with Mr. Hudson's Delaware Probation and Parole records, Wells Fargo Bank records, and employment records from Boston Barricade Company from April and May of 2018.

Immediately after Mr. Hudson was identified as a suspect, the Chief Investigating Officer reviewed the returned reports from the February 20, 2017, and March 7, 2017, Cell Tower Warrants. A reviewing the cell tower data, the number identified as Mr. Hudson's hit a cell phone tower located at 1206 Tulane Road, near Top of the Hill Apartments on February 13, 2017, at approximately 2002 hours. This time and date coincided with the abduction at Top of the Hill Apartments.

### Additional Search Warrants

On April 19, 2018, a search warrant was issued for cell phone records to include historical cell tower location data from Metro PCS for the number 302-XXX-8870, the number previous identified as Mr. Hudson's phone number. Also on April 19, 2018, a search warrant for Google, Inc. asking for content and

subscriber information related to the email account hudsonkwesi2@gmail.com was issued. At the time the warrant was issued, New Castle County was aware of Mr. Hudson's email though phone extraction from the Pennsylvania Android warrant.

On June 26, 2018, a subsequent search warrant was issued for cell phone records to include historical cell tower location data from Metro PCS for the number 302-XXX-8870. The subsequent search warrant did not mention information obtained from the Pennsylvania Android warrant and did not rely on any information returned from the initial April 19, 2018. Also on June 26, 2018, a search warrant was signed for Google, Inc., specifically requesting location information, search and browsing history, and subscriber information between the dates of January 27, 2017, and May 24, 2017, for any and all accounts related to 302-XXX-8870 and IMEI number 86341032809147. Mr. Hudson's phone number and IMEI used to request data from Google were identified by police in Pennsylvania before the Pennsylvania search warrant for the Android was issued. This June Google warrant did not contain any information from either the extraction from the Pennsylvania Android warrant or from the April Google warrant. In addition to the two previous Google warrant, on August 29, 2018, another warrant was signed for Google information requesting location data, browse and search history, and subscriber information associated with the hudsonkwesi2@gmail.com between the dates of January 27, 2017, and May 24,

9

2017. The August Google warrant references the June Google warrant used to identify the email account associated with Mr. Hudson's cell phone.

On April 6, 2018, a search warrant was issued for the residence at 707 West 28th Street Wilmington, DE 19802 as the New Castle County Police, during their investigation, obtained an address for Mr. Hudson. Nothing of value to this case was recovered in the search.

On April 30, 2018, Detective Daniel McFarland of the Delaware County District Attorney's Office, Criminal Division, authored a search warrant for a buccal swab of Mr. Hudson. The judge in Pennsylvania signed the warrant. Mr. Hudson was being held in Pennsylvania for armed robberies. The probable cause for the search, from the reading of the affidavit of probable cause, was based on information provided by Detective Levy of the New Castle County Police Department.

***Inditement to Present Proceeding***

On September 24, 2018, the State of Delaware indited Mr. Hudson and charged him with many offenses for crimes committed on February 13, 2017, February 19, 2017, and March 6, 2017. For crime on February 13, 2017, the State indited Mr. Hudson for Kidnapping in the First Degree, Robbery in the First Degree, Assault in the First Degree, and Unlawful Sexual Contact in the First Degree. For the crimes on February 19, 2017, The State indited Mr. Hudson for Kidnapping in

the First Degree, Rape in the Second Degree, Robbery in the First Degree, Burglary in the First Degree, Home Invasion, Aggravated Menacing, Terroristic Threatening, and Assault in the Third Degree.  For the crimes committed on March 6, 2017, the State indited Mr. Hudson for Attempted Kidnapping in the Second Degree, Attempted Robbery First Degree and Terroristic Threatening.

On July 30, 2021, Mr. Hudson filed this Motion to Suppress to challenge the warrants present in this case.  On September 27, 2021, the State filed a response to Mr. Hudson's Motion.  This Court heard argument on November 12, 2021. During oral argument, the Court asked for supplemental briefs which were filed by Mr. Hudson on November 17, 2021, and by the State on November 19, 2021.

**PARTIES' CONTENTIONS**

**A. Mr. Hudson**

*1. Motion for Evidentiary Hearing*

In addition, upon supplemental briefing, Mr. Hudson argues specific paragraphs of probable cause affidavits should be omitted because of falsity and seeks an opportunity to prove falsity of the statements by officer testimony to "develop a full and complete record."  Mr. Hudson quotes Delaware precedent illustrating the need for a hearing to be held where a defendant makes a substantial preliminary showing a false statement was made knowingly, intentionally, or reckless disregard for the truth in the warrant affidavit.

11

As for the false statements, in the DNA warrant, Mr. Hudson claims Paragraph 46 of the probable cause affidavit is false. Paragraph 46 states the clothing worn in West Goshen PA is similar to the clothing worn in the Delaware crimes. It is Mr. Hudson's belief if this Court omitted the statement about Mr. Hudson's clothing worn in West Goshen PA to be similar to the Delaware crimes due to its falsity, the warrant would be void as there would be no probable cause.

As for the search warrants relating to phone number, XXX-XXX-8870, and information relating to Google account hudsonskwesi2@gmail.com, Mr. Hudson claims Paragraph 41 is a materially false statement because it stated Mr. Hudson's physical description, height weight, clothing description and actions during the May 24, 2017, PA robbery were consistent with the modus operandi and description of the suspect in the affidavit. In addition, Paragraphs 46-59 contain "generally unsupported and non-particular facts." Again, Mr. Hudson argues if he can prove the statements are false, the affidavit would not serve as a sufficient nexus between the robberies in Pennsylvania and the abductions in Delaware making the warrants void as probable cause does not exist.

2. *Motion to Suppress*

Mr. Hudson contends the cell phone tower warrants for Arundel Apartments and Top of the Hill Apartments from February 20, 2017, and the cell phone tower warrants for the Bluffs Apartments from Match 7, 2017 were not supported by

probable cause.  Mr. Hudson believes because the affidavits for the Cell Tower warrants sought possible suspects and witnesses located where the criminal act took place and during the time period the act took place, there was no individual in mind. Therefore, Mr. Hudson argues, the warrants are absent the facts and logical inferences to create the nexus required for the cell site location information ("CSLI") requested to create forming a case against him.  Under Mr. Hudson's theory, because the cellphone tower warrants are invalid and were used in support of other warrants, all subsequent searches stemming from the cellphone tower warrants must be suppressed as all evidence obtained in subsequent warrants are fruits of a poisonous tree.

**B. The State**

*1. Motion for Evidentiary Hearing*

The State contends an evidentiary hearing is not necessary for this Court to rule on Mr. Hudson's Motion to Suppress because Mr. Hudson failed to make a substantial preliminary showing a false statement exists on the probable cause affidavit was made knowingly, intentionally or with reckless disregard for the truth.  According to the supplemental briefing, Mr. Hudson made no claim of deliberate falsehood, which is required by Franks and the Court can rule based on the four corners of the affidavit.

13

*2. Motion to Suppress*

The State contends the judge had a substantial basis to find probable cause for the Cell Tower Warrants because evidence of the crimes may be found at the locations sought to be searched due to the specificity in time and location corresponding with the criminal acts.

Additionally, the State brings forth a Massachusetts case as instructive as the facts are similar the case now before this Court. Although the contention of Mr. Hudson's Motion was cell tower warrants in the first motion for suppression, the State chose to address the validity of every warrant in the present case.

## STANDARD OF REVIEW

On a motion to suppress evidence collected pursuant to a warrant, the defendant bears the burden of proving that the search violated his rights under the U.S. Constitution, the Delaware Constitution, or Delaware statutory law.[2] The defendant must prove his rights were violated by a preponderance of the evidence.[3]

## DISCUSSION

This Court will first address why an evidentiary hearing is not warranted under these facts based on Mr. Hudson's allegations of falsity for the warrant affidavits for the DNA sample, phone number, XXX-XXX-8870, and information relating to

---

[2] *State v. Preston*, 2016 WL 5903002, at *2 (Del. Super. Sept. 27, 2016).
[3] *State v. Lewis*, 2013 WL 2297031, at *2 (Del. Super. May 20, 2013).

14

Google account hudsonskwesi2@gmail.com. Then moving to Mr. Hudson's allegations related to suppression of evidence found by and through the Cell Tower Warrants, the Court will analyze the constitutionality of the Cell Tower Warrants.

## A. An Evidentiary Hearing in accordance with *Franks* is not necessary.

Mr. Hudson has correctly pointed to *Franks v. Delaware* for challenging a search warrant affidavit and his right to be heard by this Court on falsity issues relating to warrant affidavit.[4] Under *Franks*, Fourth Amendment protection require a defendant to be heard by the court if the defendant (1) makes a substantial preliminary showing that the affiant made a false statement knowingly and intentionally, or with reckless disregard for the truth; and (2) the allegedly false statement was necessary to the finding of probable cause.[5]

To justify an evidentiary hearing, "[t]here must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."[6] The specific portions of the affidavit that are claimed to be false must be identified and be accompanied by a statement of supporting reasons.[7] Claims of negligence or innocent mistake are insufficient.[8]

---

[4] *Franks v. Delaware*, 438 U.S. 154, 171 (1978).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

Finally, the affidavit is presumed to be valid, and the burden to overcome the presumption of validity of the affidavit lies on the Defendant by a preponderance of the evidence standard.[9]

> *1. Mr. Hudson does not establish by a preponderance of the evidence, the police knowingly, intentionally, or with reckless disregard for the truth, made a statement material to a finding of probable cause.*

<u>a. DNA Sample Warrant</u>

Mr. Hudson argues for the DNA sample warrant affidavit, the statement about clothing worn in at the West Goshen PA robbery was similar to the clothing worn in the Delaware crimes is false. His support for this contention is a review of the affidavit shows "all four physical and immutable traits described by witnesses are different." Mr. Hudson fails to acknowledge the statement he is contesting because he believes is false has to do with the suspects clothing, not every physical and immutable trial described by witnesses. In the West Goshen robbery, the suspect was described as wearing a possibly blue hood sweatshirt, dark jean/pants, possibly black hood winter jacket, black and red ski mask, black boots, and winter gloves. Two victims of the abductions described the suspect as wearing all black, black gloves, and black ski mask. The other victim described him as wearing colored hooded sweatshirt and jeans, dark work boots, black leather gloves, and a mask covering his nose and mouth. Certainly, these descriptions of the suspects clothing

---

[9] *Franks*, 438 U.S. at 154.

16

as described by the victims or witnesses are not identical. However, the affidavit does not make this claim, it states similarity which under these descriptions, seem similar to this Court.

### b. Warrants relating to phone number, XXX-XXX-8870, and information relating to Google account hudsonskwesi2@gmail.com

Mr. Hudson further argues the search warrant affidavits relating to phone number, XXX-XXX-8870, and information relating to Google account hudsonskwesi2@gmail.com, contained a materially false statement because it stated Mr. Hudson's physical description, height weight, clothing description and actions during the May 24, 2017, PA robbery were consistent with the modus operandi and description of the suspect in the affidavit and other statements contained "generally unsupported and non-particular facts." Mr. Hudson's support for the above statement being false is the PA robberies did not involve any sexual assault or attempted assaults and the descriptions of the suspect given by the victims varied in height, age, ethnicity, skin color or race. This Court ignores Mr. Hudson's argument relating to statements in the affidavit contained "generally unsupported and non-particular facts" because the allegation is not accompanied by a statement of supporting reasons as required.

17

<u>c. Mr. Hudson does not allege statements were made knowingly, intentionally or with reckless disregard for the truth.</u>

Mr. Hudson does not establish by a preponderance of the evidence, that the police knowingly, intentionally, or with reckless disregard for the truth, made a statement material to a finding of probable cause as required by *Franks*. He merely alleges the description of "all four physical and immutable traits described by witnesses are different" rather than focusing on the description of clothing and alleges the description and *modus operandi* differed from PA to DE incidents. Mr. Hudson does not provide any supporting reasons or articulate any facts contributing to this allegation. As the Superior Court held in *State v. Brinkley*, a request for an evidentiary hearing will be denied if the allegations are merely conclusory or are generic statements.[10] Mr. Hudson's allegations, unsupported by any substantial proffer, are generic and conclusory and are not sufficient to grant an evidentiary hearing.

**B. Sufficiency of the Warrants**

Under the Fourth Amendment to the U.S. Constitution, citizens have the right to be free from unreasonable searches and seizures.[11] A warrant supported by probable cause and issued by a neutral magistrate makes a search "reasonable" for

---

[10] *State v. Brinkley et al*, I.D. No. 1412017874, at *18 (Del.Super. Nov. 18, 2015).
[11] U.S. CONST. amend. IV.

Fourth Amendment purposes. Under 11 Del. C. § 2306, the application for a search warrant must allege the cause for which the search is made and must recite the facts upon which such suspicion is founded.[12] Under 11 Del. C. § 2307, the judge issuing the search warrant may issue a warrant when the facts recited in the application constitute probable cause for the search.[13] Probable cause exists when, based on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[14]

## C. *Carpenter* decision does not apply to the cell tower warrants.

The main contention Mr. Hudson presents is with the Cell Tower Warrants. He argued the cell tower warrants are required to be treated in the same manner as the CSLI collected in the *Carpenter* case. In *Carpenter*, prosecutors applied for an under the Stored Communications Act to retain the defendant's cell phone records, which included historical CSLI, for a seven-day period and a 127-day period.[15] The court found the compelled disclosure of the defendant's CSLI constituted "a search within the meaning of the Fourth Amendment" which was conducted without a warrant and did not fall into an exception to the warrant requirement.[16] Ultimately,

---

[12] 11 Del. C. § 2306.
[13] 11 Del. C. § 2307.
[14] *Bradley v. State*, 2019 WL 446548, at *5 (Del. Feb. 4, 2019).
[15] *Carpenter v. United States*, 138 S. Ct. 2206, 2212 (2018).
[16] *Id.*

19

the court held citizens have a legitimate expectation of privacy in the records of their physical movements as captured through CSLI.[17]

While the warrants in this case sought CSLI, like in *Carpenter*, Mr. Hudson's argument failed to consider the difference between a cell tower data and a single person's location over an extended period, as illustrated in the *Carpenter* decision. The warrants sought requested cellular data information known as "tower dumps." "Tower dumps" retrieve CSLI information for all devices connected to a cell site tower at a previous point in time.[18] *Carpenter* does not apply in situations tower dump situations as the court explicitly declined to reach the question of whether cell phone tower dumps raise the same specter of Fourth Amendment intrusion and interests.[19]

### 1. The Affidavits Established Probable Cause to Issue the Cell Tower Warrant.

It appears the Delaware Supreme Court has not directly addressed the issue of CSLI obtained from cell tower dump. Additionally, the parties have cited no Superior Court cases directly on point, and this Court is not aware of any such case.

---

[17] *Id.*

[18] *See United States v. Adkinson*, 916 F.3d 605, 608 (7th Cir. 2019).

[19] Carpenter, 138 S. Ct. at 2220. ("Our decision today is a narrow one. We do not express a view on matters not before us: real-time CSLI or 'tower dumps' (a download of information on all the devices that connected to a particular cell site during a particular interval).")

With no binding authority and no guidance from *Carpenter*, this Court may look to how this Court and the Delaware Supreme Court has analyzed other similar cell phone date issues.

While the Delaware Supreme Court has not addressed issues relating to CSLI obtained from a cell tower dump, it has addressed individual cell phone searches for the cell phone data of one suspect in a particular case. Mr. Hudson attempts to use *Wheeler* and *Taylor* to support the cell tower dump warrants are unconstitutional. These two cases are this Court's guidance on constitutionality of search warrants of a defendant's electronic devices.

> ### a. Probable cause for cell tower dump warrants under *Wheeler* and *Taylor*.

Under Delaware Law setting forth the specific requirements for warrant applications[20], a search warrant must state with particularity the person or place to be search and the items sought in as much detail as possible:

> If the judge, justice of the peace or other magistrate find that the facts recited in the complaint constitute probable cause for the search, that person may direct a warrant to any proper officer or to any other person by name for service. The warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or persons sought as particularly as possible.[21]

---

[20] 11 Del. C. § 2306.
[21] Id. at § 2307(a).

In *Wheeler*, the Supreme Court recognized electronic devices require greater protections than other forms of property, given the "enormous potential for privacy violations" that "unconstrained searches" of these devices pose.[22] The Supreme Court held a warrant has to "describe the things to be searched with sufficient particularity and be no broader than the probable cause on which it is based."[23] Those requirements serve the Fourth Amendment's particularity and narrowness objectives—ensuring that "those searches deemed necessary [are] as limited as possible" and eliminating "exploratory rummaging in a person's belongings."[24]

The Supreme Court found the warrants in *Wheeler* failed to limit the search to any time frame, when the relevant dates were available to police. And the police had a more precise description of where evidence of criminal activity might be found that could have been included in the warrants. Ultimately, the *Wheeler* search warrants were general warrants and violated the particularity requirement of constitutional and state law. This Court does not find the facts of this case are similar to Wheeler as to find the warrants are general warrants and violated the particularity requirement. Under the facts of this case, the warrants do what the warrants in Wheeler failed to do, limit the search to a specific time frame. The Cell Tower

---

[22] *Wheeler v. State*, 135 A.3d 282 (Del. 2016).
[23] *Id.*
[24] *Id.* (alteration in original) (citations omitted) (*quoting Coolidge*, 403 U.S. at 467, 91 S.Ct. 2022); *id.* at 296.

Warrants were all limited in time, not one warrant exceeded two hours and were issued for time frames when the attempted and completed abductions occurred.

In *Taylor*, the individual cell phone warrant authorized a top-to-bottom search of any and all stored data of the digital contents of the devices and "any other information/data pertinent to this investigation."[25]  The warrant did not limit the search to any relevant time frame, and the warrant used the open-ended language "including but not limited to" to describe the places to be searched.[26]  Ultimately, the Supreme Court found the warrant for defendant's smartphones did not describe the items to be searched for and seized with as much particularity as the circumstances reasonably allowed and was broader than the probable cause on which it was based, and thus was unconstitutional.[27]  Just like in *Wheeler*, the *Taylor* warrant did not limit the search to relevant times, which this Court has established is not the case in the Cell Tower Warrants.  As for the open-ended language "including but not limited to" to describe the places to be searched, which the Supreme Court found to be unconstitutional, we do not see such open-ended language in this case.  The Cell Tower Warrants ask for phone numbers which pinged the cell towers within specific location coordinates.  No other data is being

---

[25] *Taylor v. State*, 2021 WL 4095672, at *8 (Del. 2021).
[26] *Id.*
[27] *Id.*

23

collect beyond the cell phone numbers in the specific locations over a short-specific time period relating to the investigations of abductions.

The warrants present in this case are not a top-to-bottom search of any and all stored data of the digital contents of the devices and "any other information/data pertinent to this investigation" belonging to the defendant like the one in *Taylor*. A distinction must be made between a warrant for an individual's data found on their devices and cell tower dumps, like the Cell Tower Warrants. The search in contention is not one of all data of an individual's devices so a lower standard should be warranted. However, even if this Court chooses to look at the cell tower dumps under the lens of *Taylor*, there is not similar broad language to render the Cell Tower Warrants unconstitutional as the warrant in *Taylor*.

## CONCLUSION

For the aforementioned reasons, Mr. Hudson's Motion for an Evidentiary Hearing is **DENIED**, and Mr. Hudson's Motion to Suppress is hereby **DENIED.**

**IT IS SO ORDERED.**

**/s/ Calvin L. Scott**
**Judge Calvin L. Scott, Jr.**

24